# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE ANTAR,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>LEXINGTON NATIONAL<br>INSURANCE CORP., *et al.*,<br><br>　　　　　　Defendants. | Case No. 23-cv-1685-BAS-BLM<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND (ECF No. 54)** |

Pending before the Court is Defendant Lexington National Insurance Corporation's ("Lexington") Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss this action. (ECF No. 54.) Plaintiff George Antar filed this action seeking declaratory and injunctive relief to prevent the sale of his property to fulfill an indemnity obligation claimed by Defendant related to a forfeited criminal bond. (FAC, ECF No. 7.) For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss. (ECF No. 54.) The Court further **GRANTS** Plaintiff leave to amend his Amended Complaint.

## I.    Factual Background

This matter results from the forfeiture of a criminal bond. In March 2019, Akrum Alrahib was indicted on charges of conspiracy, conspiracy to commit wire fraud, wire

fraud, and fraudulent evasion of the Federal Tobacco Excise Tax in the U.S. District for the Southern District of Florida. (FAC at ¶ 1.) The criminal court set a corporate surety bond of $1 million and a personal surety bond of $1.5 million. (*Id.* at ¶ 2.) Plaintiff Antar and Alrahib have a lengthy personal history. Antar is childhood friends with Alrahib's spouse, and, beginning in 2018, Antar invested over $1.3 million in Alrahib's tobacco business and financed a number of Alrahib's business projects. (FAC at ¶¶ 16–20.) When Alrahib was indicted, Alrahib's family badgered Antar to put up his property as collateral for Alrahib's bonds. They promised to reimburse him from a lawsuit settlement if anything happened to his property. (*Id.* at ¶ 24.) Antar agreed.

In May 2019, Lexington issued Alrahib's personal and corporate surety bonds, which were secured by Antar and Martin P. Kerrins, who also knew Alrahib. Antar signed an Indemnification Agreement with Defendant Lexington to secure Alrahib's bond that required Antar to indemnify Lexington for "any and all losses, demands, liabilities, fees and expenses relating to, or arising out of, [Lexington's] issuance of" Alrahib's bond. (ECF No. 7-3 at 2.) As security for the Indemnification Agreement and bond, Antar executed a deed of trust to convey his apartment building located in San Diego, California to a trustee as security for Alrahib's bond. (FAC at ¶ 32.)

While Alrahib was awaiting trial, the Government moved to revoke and estreat his bond after he engaged in witness tampering and contempt, among other violations of his bond. (*Id.* at ¶ 4.) Alrahib subsequently admitted to the witness tampering and contempt. (*Id.* at ¶ 5.) In September 2022, the criminal court granted the Government's motion, and Alrahib's $1 million corporate surety bond and $1.5 million personal surety bonds were forfeited. (FAC at ¶ 8.) This order was subsequently appealed to the Court of Appeals for the Eleventh Circuit. (ECF No. 54 at 11.)

When Alrahib's bond was ordered forfeited, Lexington filed a notice of default under the Indemnification Agreement informing Antar his pledged apartment building would be sold to recoup its losses from the forfeited bond. (FAC at ¶ 8.) On October 11, 2022, Antar filed this action in the U.S. District Court for the Southern District of Florida

seeking to block the sale of the apartment building. (ECF No. 1.) He filed his amended complaint on October 19, 2022. (FAC.) Following briefing, the U.S. District Court for the Southern District of Florida granted Antar a temporary restraining order against the sale of his property while the bond forfeiture was appealed. (ECF No. 18.) Lexington then moved to dismiss the case or transfer the case in the alternative. (ECF No. 25.) On September 12, 2023, the case was transferred to this Court. (ECF No. 37.) Lexington subsequently filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 54.)

## II.  Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

A complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A complaint states a plausible claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not accept conclusory allegations as true; rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted).

Where a complaint fails to state a plausible claim, the court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (internal quotations omitted).

### III. Analysis

#### A. Choice-of-Law Analysis

The Court has diversity jurisdiction over Plaintiff's contract law claims. Sitting in diversity, the Court must determine which state's law applies to the alleged claims. The Indemnification Agreement does not contain a choice-of-law clause, but the parties appear to agree that California law applies. In order to determine which state's law applies, "a court ordinarily must apply the choice-of-law rules of the State in which it sits." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007).

California courts apply two choice-of-law tests in contract law: the statutory test set out in California Civil Code Section 1646 and the general governmental interest analysis test. *See Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 545 F. Supp. 3d 820, 830–31 (C.D. Cal. 2021). According to Section 1646, a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. Federal courts have come to the general consensus that California Civil Code Section 1646 governs in interpreting the terms of a contract. *See Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020). This comports with decisions by the California Courts of Appeal. *See Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1443 (2007). For other choice-of-law issues such as the validity and enforceability of the contract, however, courts apply the governmental interest test. *Id.* at 1460.

Plaintiff makes two claims related to the Indemnity Agreement. First, Plaintiff claims he is only liable under the Indemnification Agreement for forfeiture of the bond if Alrahib failed to appear in court. (FAC at ¶¶ 41–42.) This question goes to the interpretation of the terms of the Indemnity Agreement and is thus governed by California

law. Second, Plaintiff asserts the Indemnification Agreement is invalid for lack of consideration. (FAC at ¶ 43.) This question goes to the formation of the contract, and the relevant law is determined using the governmental interest analysis. The Court thus assesses whether California law, where the contract was entered into, applies or whether Florida law, where the bond forfeiture occurred, applies.

> The California governmental interest analysis involves three steps:
>
> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006). For the first step, there is a material difference of law if application of the states' laws would lead to different results. *See McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 88–90 (2010).

Under California law, an agreement is unenforceable where it "lack[s] mutuality of obligation." *Bleecher v. Conte*, 29 Cal. 3d 345, 350 (1981). "The promises of each party must be legally binding in order for them to be deemed consideration for each other." *Id.* In the context of a surety agreement, "[w]here a suretyship obligation is entered into at the same time with the original obligation, or with the acceptance of the latter by the creditor, and forms with that obligation a part of the consideration to him, no other consideration need exist . . . ." Cal. Civ. Code § 2792. Under Florida law, a contract must be supported by consideration, but it is not necessary that the benefit goes to the person making the promise. *See Terzis v. Pompano Paint & Body Repair, Inc.*, 127 So. 3d 592, 596 (Fla. Dist. Ct. App. 2012). In the context of a surety agreement, if a benefit or promise to the original

obligor is made by the surety, there is sufficient consideration to support the contract. *Lake Sarasota, Inc. v. Pan. Am. Sur. Co.*, 140 So. 2d 139, 142 (Fla. Dist. Ct. App. 1962).

California law and Florida law do not appear materially different with respect to consideration for a contract or consideration in the context of a suretyship. The Court thus applies California law and need not proceed to steps two or three of the governmental interest analysis.

### B.     Contract Interpretation

Plaintiff claims he does not need to compensate Defendant for the forfeited bond because the Indemnification Agreement only requires Antar to indemnify Lexington if Alrahib failed to appear in court. (FAC at ¶ 30.) Defendant moves to dismiss asserting the Indemnity Agreement protects Lexington if Alrahib's bond is forfeited for any reason, not merely his failure to appear in court, and that Plaintiff was aware that Alrahib's bond could be forfeited for reasons beyond non-appearance. (ECF No. 54 at 7–10.) In response, Plaintiff argues the terms of the contract are ambiguous and extrinsic evidence must be considered to ascertain their meaning such that dismissal is premature. (ECF No. 55 at 10–11.)

"Interpretation of a contract is a purely legal question" which is susceptible to a to motion to dismiss. *Gerlinger v. Amazon.com, Inc.*, 311 F.Supp.2d 838, 843 (N.D. Cal. 2004) (citing *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003) (noting interpretation of a contract is a pure question of law)). Under California law, an indemnity agreement is interpreted according to the language and contents of the contract using the same rules that govern the interpretation of other contracts. *See Carr Bus. Enters., Inc. v. City of Chowchilla*, 166 Cal. App. 4th 14, 20 (2008). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998) (citing Cal. Civ. Code § 1636). In examining a contract, the Court will "infer the parties' intent, if possible, solely from the written provisions of the contract." *Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 37 (2018) (citing Cal. Civ. Code § 1639).

"The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation.  Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949–50 (9th Cir. 2002) (quoting *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990)) (citations omitted).  Where the meaning of a contract is unambiguous, such that it is not reasonably susceptible to different meanings, the Court applies the clear meaning of the contract. *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992).

The Indemnification Agreement is clear that Plaintiff must indemnify Defendant for any forfeiture of Alrahib's bond, not merely for his failure to appear in court.  Plaintiff emphasizes the first clause of the Indemnity Agreement provides: "You will have Defendant appear in any court required in connection with the Bond at the times stated in the Bond and all other times as may be ordered by the court." (ECF No. 7-3 at 2.)  Plaintiff is correct this clause creates an obligation to indemnify Defendant if Alrahib fails to appear in court in connection with the bond.  However, this is not the only obligation imposed by the contract.  Specifically, in the next clause, the Indemnity Agreement requires that Andar:

> [J]ointly and severally (together and separately) with any other indemnitor, shall indemnify the Surety and keep the Surety indemnified and hold it harmless from and against any and all losses, demands, liabilities, fees and expenses relating to, or arising out of, Surety's issuance or procurement of the bond, including, but not limited to the following: (A) the principal amount of any forfeiture of, or judgment on, the Bond, plus any related court costs, interest and legal fees incurred . . . .

(*Id.*)  This obligation is the basis for Lexington's attempt to recoup its losses related to the bond.

The contract clause plainly requires Andar to indemnify Defendant for the loss of the bond's principal and any fees associated with that forfeiture.  Andar, as the indemnitor, "shall indemnify" Lexington "against any and all losses, demands, liabilities, fees and expenses" related to Lexington's issuance of the bond.  This language is unambiguous.

The Court need not examine extrinsic evidence to determine its meaning. *See City of Chino v. Jackson*, 97 Cal. App. 4th 377, 384 (2002) (finding the language of an indemnity agreement providing the indemnitor "shall indemnify and hold harmless Surety from and against any and all liability, loss, claims, demands, costs, damages, attorneys fees and expenses . . . which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond" was unambiguous such that extrinsic evidence need not be considered); *Amwest Sur. Ins. Co. v. Patriot Homes, Inc.*, 135 Cal. App. 4th 82, 87 (2005) (holding the defendants agreed to indemnify Amwest against losses from "any" bond issued for defendants).

Plaintiff contends the Indemnity Agreement is nevertheless ambiguous because the parties disagree about the meaning of the Indemnity Agreement. (ECF No. 55 at 12.) This is not so. Plaintiff cannot manufacture ambiguity by failing to acknowledge the clear meaning of the contract. Further, Plaintiff fails to even allege any facts or extrinsic evidence to claim the plain terms of the contract were not intended by the parties.

Plaintiff next insists he was unaware of the terms of Alrahib's bond other than ensuring Alrahib's appearance in court. (ECF No. 55 at 6.) First, Antar should have been aware of the terms of the bond because his performance in indemnifying Lexington was dependent on Alrahib's performance under the criminal bond. *Cf. First Nat'l Ins. Co. v. Cam Painting, Inc.*, 173 Cal. App. 4th 1355, 1367 (2009) (discussing references to other contracts connected to a performance bond in contract interpretation). Second, the reason the bond was forfeited is of no import to the contract or the Court. Under the Indemnity Agreement, Andar is obligated to make Defendant whole for any losses incurred as a result of issuing the bond. Defendant suffered losses when Alrahib's bond was forfeited. Unambiguously, Andar must then compensate Defendant for those losses.

### C.     Sufficiency of Consideration

Plaintiff claims the "Indemnification Agreement does not provide that any consideration was provided and there was none." (FAC at ¶ 31.) Defendant avers the Indemnification Agreement is supported by consideration because there was a written

- 8 -

23cv1685

contract between the parties and Defendant provided the bond used to secure Alrahib's release pending trial. (ECF No. 54 at 10–11.) Plaintiff does not respond to this argument.

Under California law, a written obligation is itself presumptive evidence of consideration. Cal. Civ. Code § 1614. A party seeking to invalidate a contract for lack of consideration bears the burden of showing there was inadequate consideration. *Id.* § 1615. And "[w]here a suretyship obligation is entered into at the same time with the original obligation, or with the acceptance of the latter by the creditor, and forms with that obligation a part of the consideration to him, no other consideration need exist . . . ." Cal. Civ. Code § 2792.

The existence of the Indemnity Agreement is presumptive evidence of consideration. The terms of the contract also plainly demonstrate a mutuality of obligation. The first line of the contract states:

> You, the undersigned indemnitor . . . hereby represent and warrant that the following declarations made and answers given are true, complete and correct and are made for the purpose of inducing Lexington National Insurance Corporation . . . to issue, or cause to be issued, bail bond(s) . . . .

(ECF No. 7-3 at 1.) The consideration in this contract was Lexington's provision of Alrahib's bail bond in exchange for Antar's promise to indemnify Lexington for any losses related to that bond. By the terms of the contract, and by virtue of its suretyship obligation, there was adequate consideration.

### D. Mutual Mistake of Fact

In his opposition to Lexington's motion to dismiss, Plaintiff asserts the parties were mutually mistaken about his obligations under the surety bond such that the Indemnification Agreement is void. (ECF No. 55 at 12–13.) First, this argument relies on facts beyond the bounds of Plaintiff's Amended Complaint. While the Court may consider legal arguments outside the pleadings, the Court is bound to consider the facts as alleged in the Amended Complaint. *See Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009) (holding memoranda and points of authorities are not considered matters

outside the pleadings); *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (noting facts not alleged in the complaint may not be evaluated on a motion to dismiss).

Second, because the terms of the Indemnity Agreement are unequivocal and clear, Plaintiff would need to allege facts beyond the language of the contract to claim a mutual mistake of fact as to the nature of Plaintiff's obligations. He has not done so. Even if the Court accepts Plaintiff's contention he did not understand the nature of the Indemnity Agreement, Antar fails to allege any basis that Lexington also misunderstood the nature of the contract.

Accordingly, Plaintiff's allegations that the Indemnity Agreement is void fail to allege sufficient facts. However, because Plaintiff could possibly cure this deficiency with greater factual specificity, the Court shall grant him leave to amend his claim.

**IV.  Conclusion**

Defendant's Motion to Dismiss (ECF No. 54) is **GRANTED**. The Court dismisses Plaintiff's Amended Complaint with leave to amend. If Plaintiff wishes to file a Second Amended Complaint, he must do so by **May 1, 2024.**

IT IS SO ORDERED.

**DATED: April 18, 2024**

Hon. Cynthia Bashant
United States District Judge